IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY ANDREW HOBSON,<br><br>Defendant. | No. 3:26-mj-00112-MMS |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Katie Yarborough, having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that TIMOTHY ANDREW HOBSON has committed the following federal criminal offenses:

   **Count 1 – Assault with Intent to Commit a Felony**: On or about February 22, 2026, within the special aircraft jurisdiction of the United States, TIMOTHY ANDREW HOBSON did assault VICTIM 1 with intent to commit a felony, to wit: abusive sexual contact in violation of 18 U.S.C. § 2244, all of which is in violation of 18 U.S.C. § 113(a)(2) and 49 U.S.C. §46506(1).

2. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, my own investigation of this matter, and my training and experience. Since this affidavit is being submitted for the limited purpose of



establishing probable cause to support a complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

3. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been an SA with the FBI for approximately seven years. I am currently assigned to the White-Collar squad in the FBI Anchorage Field Office. During my time with the FBI, I have led and participated in investigations involving violent crimes, threats, robbery, fraud, health care fraud, fraud against the government, and drugs. I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

## FACTS ESTABLISHING PROBABLE CAUSE

4. On February 22, 2026, at approximately 12:00 a.m., I received a phone call from FBI Anchorage Ops Center, who reported an incident which was called in from Anchorage Airport Police Department (AAPD) dispatch for flight AS 733, registered aircraft number 'N593AS', departing Portland, Oregon on February 21, 2026 and was scheduled for arrival at Ted Stevens Anchorage International Airport (ANC) on February 22, 2026 at approximately 12:07 AM AKDT. Alaska Airlines flight crew members reported an intoxicated passenger, HOBSON, inappropriately touched a female passenger, VICTIM 1.

5. Upon arrival of AS 733 to ANC, AAPD police officers met the flight crew and a witness passenger at the gate and provided witness statement forms for them to fill out. AAPD escorted HOBSON off the plane and took him to their holding room at their AAPD office in the terminal.

6. Upon arrival, another FBI SA and I interviewed VICTIM 1. VICTIM 1 stated she was sitting in the window seat and first saw HOBSON during the boarding process, when



he sat in the middle seat next to her. She immediately had an uneasy feeling about him as soon as he sat down. Within a few minutes of taking his seat as the other passengers were still boarding the aircraft, HOBSON turned his whole body sideways and fully faced her. HOBSON stared at her for a few seconds and smiled at her. VICTIM 1 ignored him and did not make eye contact because she was uncomfortable and thought he was being "creepy." A couple minutes later, he did the exact same thing again. She continued ignoring him.

7. Later, HOBSON acted like he dropped something and reached his arm over her left leg and down in between her legs to the floor under her feet as if he was picking it up. VICTIM 1 noted that he never dropped anything nor brought anything back up from the floor. She believed this was his way of trying to touch her or get close to her.

8. HOBSON then spread his legs wide enough that his right leg was under her armrest, touching her entire side and leg. She tried to position herself against the window as much as possible so he would not touch her. He then repeatedly rubbed VICTIM 1's leg with his hand and she continually pushed his hand off her body.

9. Soon after the plane took off from Portland, HOBSON put his head on VICTIM 1's shoulder. VICTIM 1 pushed him off her, at first thinking he maybe nodded off from sleeping. A few minutes later, he did it again, but closer to the front of VICTIM 1's shoulder near her left breast. She immediately elbowed him and pushed him off her.

//

//

//

10. The passenger in the aisle seat, T.D., told HOBSON to get off VICTIM 1 and give her some space. VICTIM 1 then pointed to the tray table in front of HOBSON and told HOBSON that she did not want him to touch her and if he was going to lay his head down, he needed to do so on the tray table. He did not say anything to her after that.

11. Shortly after, HOBSON leaned his whole upper body over VICTIM 1's arm rest and placed his head on VICTIM 1's breasts and moved his head back and forth nuzzling her breasts. VICTIM 1 elbowed HOBSON to try and get him off her. At the same time, T.D. grabbed HOBSON and waved down a flight attendant. T.D. told the attendants what HOBSON was doing. The flight attendants then moved VICTIM 1 to another seat further back in the plane.

12. VICTIM 1 stated that immediately after pushing HOBSON off her the last time, he turned to face her, was very alert and wide-eyed, and smiled at her. Based on his smile, she felt he intentionally acted like he was falling asleep so he could touch her.

13. During the interview with witness passenger, T.D., who was sitting in the aisle seat, T.D. stated that he observed odd behavior from HOBSON the moment HOBSON took his seat. He believed HOBSON was under the influence of something but did not recall smelling any alcohol on him. He saw HOBSON lean his whole body against VICTIM 1 the first time and observed VICTIM 1 push HOBSON off her. He told HOBSON to get off VICTIM 1. Shortly after, he saw HOBSON reach his body over the armrest again and grab VICTIM 1's right shoulder with his left hand and lay his head against VICTIM 1's chest. HOBSON pinned VICTIM 1 against the window with his entire torso, head, and hands. T.D. grabbed HOBSON and pulled him off VICTIM 1, telling him to get off her again. He



then waved down a flight attendant for help, noting that VICTIM 1 would not have been able to reach the call light for help with how HOBSON had her pinned.

14. During the rest of the flight after VICTIM 1 was moved, T.D. stated HOBSON continued to act strangely by making moaning sounds and repeatedly grabbing the seats in front of him.

15. Witness statement forms from the flight crew mentioned that the flight attendant, T.W., who assisted moving VICTIM 1 to a new seat, saw HOBSON continue to try and lay his head on VICTIM 1 while T.W. was finding a seat for VICTIM 1 to move to. T.W. had to poke SUBJECT multiple times before he would acknowledge T.W. and get up to move, so VICTIM 1 could get out of the row and move seats.

16. Flight attendants then notified the pilot of the incident. The pilot then notified the ground crew of the incident and asked for law enforcement to meet the plane upon landing.

17. After interviewing the witness and VICTIM 1, FBI Agents responded to the AAPD office, where HOBSON invoked his right to silence. As FBI Agents and AAPD officers exited the room, they overhead HOBSON say to himself, "I definitely drank way too much."

18. I arrested HOBSON pursuant to my authority under 18 U.S.C. § 3052. HOBSON was then transported to Anchorage Correctional Complex (ACC). During the booking process at ACC, HOBSON was administered a Breath Alcohol Content test (BrAC) at approximately 2:07 AM. The employee administering the test stated that HOBSON had a BrAC of 0.121.

//



## CONCLUSION

19. I have probable cause to believe that HOBSON has committed the offense described in the complaint. Accordingly, I ask the court to issue a warrant for HOBSON's arrest in accordance with federal rule of criminal procedure 4(a).

RESPECTFULLY SUBMITTED,

_____
KATIE YARBOROUGH
Special Agent, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) on this 23rd day of February, 2026.

_____
HON. MATTHEW M. SCOBLE
United States Magistrate Judge
District of Alaska